WILLIAM BRANDT & Co., INC., Plaintiff, *v.* SOLOMON WEIL et al., Defendants.

(Supreme Court, New York Special Term, November, 1920.)

Injunctions (mandatory) — preliminary relief denied — landlord and tenant — Laws of 1920, chaps. 942, 947.

The leases of the several tenants of an apartment house in the city of New York expired three days after the statutes (Laws of 1920, chaps. 942, 947) suspending the possessory remedies of summary proceedings and ejectment went into effect, and the tenants, claiming the right to continue in possession under said statutes, refused to vacate the premises. In an action for a mandatory injunction to dispossess the defendants and to restore possession of the premises to plaintiff, the action being in form to compel specific performance of the tenants' covenant to vacate at the expiration of the terms of their leases, *held*, that plaintiff's motion for preliminary relief of a character not essentially different from that which would be ordered upon a final determination of the action in plaintiff's favor, must be denied.

The claim of plaintiff to relief in equity being necessarily predicated upon the proposition that said statutes are a valid exercise of the police power, the question of the constitutionality of said statutes cannot be raised in the present action, but the

plaintiff must obtain relief, if any, by direct attack of said statutes as unconstitutional, on the ground that they have deprived it of the remedies to which it theretofore was entitled. (Pp. 326, 327.)

ACTION for mandatory injunction dispossessing tenants.

Meyer D. Siegel, for plaintiff.

Frueauff, Robinson & Sloan, for defendants Nathan Layman, George R. Desh and Clarence H. Keenan.

Price Brothers, for defendant Betsy Fernheimer.

Thomas J. Crawford, for defendant Cornelius C. Vail.

Gallatin & Lipton, for defendants Ray Frankenstein, Rebecca Frankenstein and Samuel Golden.

William Stanley Miller, for defendants Sali Kahn and Solomon L. Kahn.

*Amici curiae* Francis M. Scott, Julius Henry Cohen, David L. Podell.

MULLAN, J. On the 30th day of September, 1920, the plaintiff owned an apartment dwelling house in the city of New York, separate parts of which had been leased to, and were in the occupancy of, the several defendants. All the leases expired on the date mentioned, but the defendants refused to vacate, claiming the right to continuance of possession under the recently enacted landlord and tenant statutes, popularly known as the " housing laws." The plaintiff

21

brings this action to procure a mandatory injunction dispossessing the defendants, and restoring possession to the plaintiff, and this motion is for preliminary relief of a character not essentially different from that which would be ordered upon a final determination in plaintiff's favor.

The defendants make the preliminary objection that they are not properly joined. I think the point is well taken, but counsel have requested me to pass upon the other questions involved, and, in view of the conclusions I have reached, I am able to do this without depriving the defendants of the value of their objection for misjoinder.

Mr. Justice Faber in passing, a few days ago, upon a motion substantially similar to this, expressed the view that preliminary relief in the form of dispossession should be denied for the reason that such an order would virtually be a final determination in advance of the trial. *Levell & Weisch Realty Co., Inc.,* v. *Leggett,* N. Y. L. J. Oct. 13, 1920. I am thus led to assume that there were some disputed questions of fact there present, but there is nothing before me here but a question of law which, of course, can as well be passed upon on this motion as at a trial.

The plaintiff's theory is that the legislature, by abolishing (except in certain comparatively uncommon cases) all existing legal remedies that furnish the machinery for the enforcement of the right of repossession, obliged it to seek the aid of a court of equity. In form, this action is brought to compel the defendants specifically to perform their covenant to vacate at the expiration of the terms for which they held.

The statutes we are most immediately concerned with are chapters 942 and 947 of the Laws of 1920, effective September 27, 1920. These suspend, respec-

tively, until November 1, 1922, the possessory remedies of summary proceedings and ejectment. I shall not take the time to describe analytically and at length the various statutes that together constitute the legislative program designed to afford relief from conditions caused by the reported scarcity of housing accommodations. Described generally, that program has no relation to the subject of providing additional housing accommodations. It has to do merely with matters relating to the persons who shall occupy existing houses, and what rent they shall pay, and how they shall pay it, etc. In respect of the particular feature of the program that is directly presented for consideration in this case, it seems to be quite plain, and this view is concurred in by the learned counsel for the joint legislative committee primarily responsible for the legislation, that it was the intent of the legislature to abolish, for the period mentioned, all known remedies (except such incidental remedies as are customarily applied in equity actions that are brought under one of the well-defined heads of equity jurisdiction) for the repossession of his property, that the owner of the class of house we are dealing with could avail of at the time the acts were passed. There were only two of these, the old action of ejectment, and the more modern, and more frequently availed of, summary proceeding. These were actions at law. Courts of equity have refused, since very ancient times, to entertain jurisdiction of actions brought for such a purpose, except in certain cases where, because of very unusual circumstances, it was apparent that complete relief could not be obtained in a law action, as for example, *Wheelock* v. *Noonan,* 108 N. Y. 179, and *Pokegama S. P. Lumber Co.* v. *Klamath R. L. & I. Co.,* 86 Fed. Repr. 528. The reason for the refusal of equity courts to entertain jurisdiction of possessory

actions of the common sort was that the person claim-
ing to be entitled to possession had an adequate rem-
edy at law, *i. e.,* either in ejectment or by way of sum-
mary proceeding. As was to be expected, therefore,
the plaintiff relies upon the fundamental maxim that
wherever there is a right there is a remedy, and con-
tends that as there is for the time being no existing
possessory remedy at law, it is compelled to have
recourse to an appeal to equity. Ordinarily, the
soundness of such a contention would not be open to
question, but we are here concerned with a very pecu-
liar and, I think, wholly unprecedented situation, to
which the maxim referred to does not easily apply
itself. It was, as I have remarked, the object and pur-
pose of the legislature to suspend the operation of
every known law by which the kind of recapture of
real property in question here was made possible.
Had there been in existence, even if it were dormant,
a recognized equity action for the recovery of pos-
session in the common class of cases we are consider-
ing, the failure of the legislature to suspend its opera-
tion would leave it untouched, no matter what the pur-
pose of, or what the contents of the preambles in, the
acts suspending the operation of ejectment and sum-
mary proceedings. As there was no such equity
action, what this court of equity is asked to do is, in
effect, to create a form of action to take the place of
those law actions whose operation has been suspended.
But is it either the function or right of a court of
equity so to nullify the legislative will? The reported
cases and text treaties throw little or no light upon
the subject of the existence or extent of equity power
as applied to a situation like this, probably for the
very simple reason that no situation at all similar to
this was ever before a court of justice or conceived of
by the authors who wrote on equity jurisdiction. The

poorly-phrased and misleading (Pom. Eq. Juris. [4th ed.] § 425; 16 Cyc. 137) maxim, "Equity follows the law," furnishes no practical aid, as it relates, in so far as it is at all germane here, to claims that are at law prevented, by express inhibition, from ripening into, or being considered as, legal rights. In the case at bar, the right of ownership is not, at least directly, destroyed. The landlord is allowed to remain the owner, but his power of possession is taken from him. We thus have the patent anomaly of a claim to whose holder the law says — "You have a legal right, but the law will not allow you to enforce it. You cannot have your property back. The law will provide something else in its place, something just as good, but, in any event, something you must take whether you will or no." A tenant who over-stayed his agreed term has always been deemed, under the laws we hitherto have been familiar with, a mere trespasser, and no laws were more readily or more freely enforced than those that gave to the owner of real property the right to oust the trespasser and regain his rightful possession. Mr. Justice Washington said, for the United States Supreme Court, in *Green* v. *Biddle,* 8 Wheat. 1, 75: "Nothing, in short, can be more clear, upon principles of law and reason, than that a law which denies to the owner of land a remedy to recover the possession of it, when withheld by any person, however innocently he may have obtained it; or to recover the profits received from it by the occupant; or which clogs his recovery of such possession and profits, by conditions and restrictions tending to diminish the value and amount of the thing recovered, impairs his right to, and interest in, the property." In the same case Mr. Justice Story said (at p. 12): "How can it be said to be any title at all which cannot be asserted in a Court of justice by the owner, to

defend or obtain possession of his property? " But decisions of courts are scarcely needed to show that the possessory right is essential to the existence of any ownership that is not a mere name and a sham. It is neither more nor less than plain common sense that the more a man's liberty of action is curtailed or circumscribed in respect of his use in any given thing, the less must its value to him inevitably be; and it seems obvious that the destruction of an owner's power of recapture of possession of realty after the ending of a letting is a serious impairment of his rights. I am not, however, to be understood as expressing any view concerning the validity of the statutes under consideration, unless such a view is inseparable from the observations themselves that give rise to the inference of such a view. I am merely directing attention to the novelty of the question whether equity can, in circumstances such as are here present, intervene to make efficacious and real a right that the law recognizes yet seemingly refuses to enforce. While from the researches I have made I am quite confident that nothing in the way of a precedent can be discovered, I am fairly persuaded, from the very nature of the matter, that the plaintiff's relief must be obtained, if at all, by assailing the statutes that have deprived him of the remedies to which he theretofore was entitled. For, if those statutes are valid, and it is to be held, in the name of the police power as applied to the existing housing situation, that a man may own but shall not possess, that he may not fix the rent of his own property, that his contract right to receive his property back at the end of a letting may be destroyed, that the legislature may abolish one of the most ancient, important, and jealously-guarded writs that our courts of law have ever possessed, and that the burden of relieving supposedly necessitous persons

who choose to live in certain parts of the state shall fall only upon those who happened at a certain time to have their savings invested in a certain class of buildings in those certain parts of the state — to say nothing of the apparent withdrawal of numerous other constitutional guaranties and safeguards — I am quite clear that it would be as improper as it would be futile for a court of equity to attempt to thwart the public policy of which such statutes are presumably the expression, by erecting a possessory action to serve as a substitute for those that have been suspended.

Can there be a decision in this case upon the validity of the statutes suspending the possessory remedies? That, I think, depends upon the answer to the subsidiary question whether it can be said that the laws are so clearly invalid as to require a court so to hold, despite the precise form of the particular litigation before it. The plaintiff, while persistently suggesting that the laws are unconstitutional, necessarily predicates its claim of right to come into a court of equity upon the proposition that the statutes suspending the operation of the remedies of ejectment and summary proceedings are a valid exercise of the police power; for, of course, if it admitted their invalidity it would have no standing in equity. The defendant tenants do not, naturally enough, attack the acts. There is, consequently, no party to the litigation who raises the validity question, and the only party who desires to raise the question, the plaintiff, cannot do so in this action. Because of the plaintiff's theoretical assumption of validity, it would very plainly be improper, I think, for me to pass upon the constitutional questions unless the laws with which we are concerned could be said to be so palpably invalid that not even a plausible argument could be made for them. In such a case, I could very well say that the plaintiff still has its recap-

ture rights at law, and deny its motion without more ado. But although it was contended upon the argument by learned counsel — not for plaintiff — that if it were the legislative scheme to suspend the operation of all existing recapture remedies (save in the excepted instances referred to), the invalidity of the scheme is too plain to admit of argument, I cannot take that view. One of the justices of this court has expressed the opinion that the rent laws, regarded as a whole, are valid. *Guttag* v. *Shatzkin,* 113 Misc. Rep. 362. It is true that my learned brother was there passing only upon the validity of the statute suspending the remedy of ejectment. But the views he gave utterance to were, quite evidently, those entertained by him concerning the entire legislative scheme. In such circumstances, and wholly regardless of any opinion I may personally hold, I think it is fairly plain that I am not at liberty to take up and pass upon the constitutional question upon the ground of obvious invalidity. Furthermore, although I do not fully subscribe to the doctrine that courts of first instance should go to great lengths to assume constitutionality, it is at least doubtful whether they should, unless in the most exceptional case, decide constitutionality questions when, as here, they could not be argued.

It follows that the motion must be denied. No costs.

Motion denied, without costs.